Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5298 | **DATE** | 4/25/2001 |
| **CASE TITLE** | TONEY vs. ST. FRANCIS HOSPITAL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 15 MAY 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and order entered this day, defendant's motion for summary judgment is granted as to Count II and Count III and is denied as to Count IV of the complaint. The claims stated in Count IV will proceed to trial on the date previously scheduled. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | APR 2 6 2001 date docketed | 30 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | CM docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 4/25/2001 date mailed notice | |
| JS | courtroom deputy's initials | 01 APR 26 AM 7:33 | |
| | | Date/time received in central Clerk's Office | JS mailing deputy initials |

DOCKETED
APR 26 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN M. TONEY | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| ST. FRANCIS HOSPITAL, | ) No. 00 C 5298 |
| Defendant. | ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 29, 2000, plaintiff Karen M. Toney ("Toney") filed a four-count complaint against defendant St. Francis Hospital ("Hospital"). Count I of the complaint alleges a breach of a settlement agreement between the parties and was voluntarily dismissed upon an agreement reached by the parties. Count II alleges a claim of racial discrimination in violation of 42 U.S.C. §1981. Count III alleges a claim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), and Count IV alleges a claim of retaliation in violation of Title VII.

On March 19, 2001, the Hospital filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the three remaining counts. For the following stated reasons, the Hospital's motion for summary judgment is GRANTED as to Count II and Count III of the complaint, and the Hospital's motion for summary judgment is DENIED as to Toney's claim of

1

retaliation under Title VII as alleged in Count IV of the complaint.

## STATEMENT OF FACTS[1]

The Hospital is a corporation doing business in the state of Illinois with its headquarters and principal place of business located in Blue Island, Illinois. Toney was employed with the Hospital from December 17, 1993 until May 6, 1998. From January, 1996, until May 6, 1998 Toney worked in the Hospital's laboratory as a technician. On March 16, 1998, Toney filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") against the Hospital and her supervisor. Toney alleged that her supervisor, Patricia Mook ("Mook"), discriminated against her on the basis of her race. Pursuant to a settlement agreement reached between the IDHR, Toney, and the Hospital, Toney agreed to be laid off from the Hospital effective May 6, 1998 and to withdraw her charge of discrimination in exchange for valuable consideration.

After leaving the Hospital, Toney sought employment at the University of Chicago Hospital ("U of C") in August, 1998. Toney submitted her résumé to the U of C but was never hired. Toney applied again, however, to the U of C in August, 1999. At that time, Toney interviewed for a position in the coagulation laboratory. Toney interviewed first with Marilyn Rice ("Rice"), in human resources and then with Charlot Webb ("Webb"), Manager of the coagulation laboratory. Toney supplied Webb with another résumé and a list of references which did not include Mook or the Hospital. During this interview, Webb asked Toney about her employment history and past experience. Webb never asked Toney for the any names of supervisors at the Hospital. At the conclusion of the interview with Webb, Webb told Toney that she was interested in Toney for the

---

[1] The following facts are undisputed and are taken from the defendant's Local Rule 56.1(a) and plaintiff's Local Rule 56.1(b) statements of material facts and accompanying exhibits.

2

position and requested that she return to human resources to fill out an official employment application. Toney listed the Hospital as a previous employer on the application and the application contained a release/exculpatory agreement authorizing the U of C to contact Toney's former employers regarding her employment and releasing any liability against the former employers for information obtained.

After the interview, Webb contacted Toney's references and former employers. Webb contacted the Hospital and verified with the Hospital the duration of Toney's employment. Sometime after Webb contacted the Hospital, Toney received a card in the mail indicating that she would not be hired for the position in the coagulation laboratory. A couple of weeks after her interview with Webb, Mohammad Pothiawala ("Pothiawala"), a supervisor in the U of C blood bank contacted Toney requesting an interview for a new position in the blood bank. During the course of the interview, Pothiawala asked Toney about the circumstances surrounding her employment with the Hospital because he had heard that she received some bad information or bad references from the Hospital. Toney responded simply that there were some administrative differences between her and her supervisor. Pothiawala did not hire Toney and did not verify any of her references.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's

function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995) (hearsay testimony may not be considered in summary judgment proceeding).

## ANALYSIS

### I. Toney's Claim of Race Discrimination under Title VII

In order to survive a motion for summary judgment, a Title VII plaintiff must establish evidence of employment discrimination based on race or sex. In other words, Toney must establish that she was treated less favorably than other similarly situated employees for reasons of race or sex. Proof may be by direct evidence of discrimination or via the McDonnell Douglas route. See McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). In this case, Toney alleges

4

discrimination based on race and relies on the indirect method of proof described by the McDonnell Douglas case. Under the McDonnell Douglas method, Toney must show (1) that she is a member of a protected class; (2) that she was qualified for the job in question or was meeting her employer's legitimate performance expectation; (3) that she suffered an adverse employment action; and (4) that the employer treated similarly situated persons not in the protected class more favorably. See Johnson v. Zema Systems Corporation, 170 F.3d 734, 742-3 (7th Cir. 1999). If Toney establishes her prima facie case, the burden of producing legitimate nondiscriminatory reasons for the adverse action shifts to the Hospital. See Johnson, 170 F.3d at 742. Once the Hospital produces those reasons, Toney bears the burden of showing that the Hospital's proffered reasons are pretext. Id; see Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2109 (2000).

In this case, Toney has failed to establish a prima facie case of race discrimination under Title VII because the undisputed evidence in this case establishes that Toney did not have an employment relationship with the Hospital at the time of the alleged discrimination. A plaintiff must prove the existence of an employment relationship in order to maintain a Title VII action against a defendant. See Alexander v. Rush North Shore Medical Center, 101 F.3d 487, 492 (7th Cir. 1996). In this case, the crux of Toney's discrimination claims centers around alleged conversations between the Hospital and the U of C occurring around August, 1999. Effective May 6, 1998, however, Toney was no longer employed with the Hospital pursuant to the settlement agreement between Toney and the Hospital. Since Toney has failed to provide evidence in the record to establish the existence of an employment relationship between Toney and the Hospital at the time of the alleged discrimination, summary judgment in favor of the Hospital as to Toney's claim of race discrimination under Title VII as alleged in Count III of the complaint is necessary as a matter of law.

## II. Toney's Claim of Race Discrimination under §1981

By its terms, section 1981 governs contractual relationships. 42 U.S.C. § 1981(a). Section 1981 bars all racial discrimination with respect to making and enforcing contracts. Id. In order to bring a section 1981 claim there must be a contract at issue. See Gonzalez v. Ingersoll Mill. Mach. Co., 133 F.3d 1025 (7th Cir. 1998). Toney has failed to establish the existence of a contractual relationship with the Hospital sufficient to support a section 1981 claim. The settlement agreement of May, 1998, is the only contract present in this controversy. Toney, however, does not allege she was discriminated against on the basis of her race with respect to making or enforcing the 1998 settlement agreement. Toney's section 1981 claim lacks merit because there is no evidence to show that she was ever employed under a contract with the Hospital or that she was otherwise discriminated against by the Hospital with respect to making or enforcing a contract.

In addition, Toney's §1981 claim must fail because she has failed to establish a prima facie case of racial discrimination under Title VII. The same standards governing liability under Title VII applies to section 1981. Rush v. McDonald's Corporation, 966 F.2d 1104, 1113 n. 34 (7th Cir.1992); Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 511 (7th Cir.1986). Therefore, as Toney's Title VII claim fails so must her §1981 claim and summary judgment in favor of the Hospital is granted as to Count II of the complaint.

## III. Toney's Claim of Retaliation under Title VII

### A. Elements to a Prima Facie Case

Title VII makes it unlawful for an employer to discriminate against an employee once the employee brings a charge of discriminatory conduct against the employer. 42 U.S.C. § 2000e-3(a); Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 517 (7th Cir. 1996). Without direct proof of

discrimination, Toney must establish that: (1) she participated in protected activity or opposed an activity made unlawful under Title VII; (2) she subsequently suffered adverse employment action; and (3) there was a causal connection between the adverse employment action and her protected speech in order to establish a prima facie case of retaliation under Title VII. Pasqua, 101 F.3d at 518 (citing Koelsch v. Beltone Electronics Corp., 46 F.3d 705, 708 (7th Cir.1995)); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir. 1994). If Toney makes this showing, the burden of producing a legitimate nondiscriminatory reason for the adverse action shifts to the Hospital. Id. Once the Hospital produces those reasons, Toney bears the burden of showing that the Hospital's proffered reasons are pretext. Id.

As to Toney's claims of retaliation, the threshold issue on the Hospital's motion for summary judgment is whether there exists sufficient evidence in the record from which a reasonable jury could find that there is a causal connection between Toney not getting a job at the U of C and Toney's previous charges of discrimination against the Hospital settled by agreement. Toney alleges that the Hospital gave the U of C bad references in retaliation of Toney's previous charges of discrimination which resulted in Toney not being hired by the U of C. Under Ruedlinger v. Jarrett, 106 F.3d 212, 214 (7th Cir. 1997), "former employees, insofar as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers." The Hospital argues, however, that Toney cannot establish a casual connection between any alleged adverse employment action and her protected speech because Toney merely speculates that an alleged bad reference was the reason why she was not hired by the U of C. In support this argument, the Hospital states that there is no evidence that anyone at the Hospital gave any bad references to the U of C and that there is no evidence that any alleged bad references

7

given to the U of C by the Hospital were the reason why Toney did not get a job at the U of C.

In looking at all the evidence in the record, the Hospital's arguments are betrayed by two affidavits found in the Hospital's supplemental materials submitted in support of its motion for summary judgment. In the supplemental materials, the affidavit of Charlot M. Webb states that in August, 1998, Toney submitted to the U of C one résumé, and that in 1999 Toney submitted another résumé directly to Webb. Webb states that in the résumé Toney gave directly to Webb, Toney stated that her employment with the Hospital lasted from 1994 to 1998, while in the first résumé submitted to the U of C in August, 1998, Toney stated that her employment with the Hospital lasted from 1994 to "Present." Webb also states in her affidavit the following:

> 5. I contacted St. Francis Hospital, which was listed as her [Toney's] most recent employment on her [Toney's] resume. I spoke with a Patty Merk (sp?)[sic] She told me that Ms. Toney had not worked at St. Francis since November, 1997. Ms. Toney had told me that she had been laid off during a consolidation or reorganization at St. Francis. Ms. Merk(sp?)[sic] told me that Ms. Toney had not been laid off during a consolidation or reorganization. Ms. Merk(sp?)[sic] did not tell me anything about Ms. Toney's job performance and did not provide any negative information about Ms. Toney's work performance.
>
> . . .
>
> 7. I decided not to recommend to our human resources department that Ms. Toney be hired for the position in the coagulation laboratory because the information that Ms. Toney provide to me at our meeting, and contained in both version of her resumes, concerning the dates of employment and the reasons she left St. Francis was inconsistent with the information provided to me by Ms. Merk(sp?)[sic] of St. Francis.

(Aff. C. Webb p. 2).

In addition, an electronic mail ("e-mail") message from a Marilyn Rice at the U of C to a Diane Tucker of the U of C states the following:

> Charlot [Webb] stated that she offered Ms. Toney her open position, however after checking references with someone she knew and respected, she wanted to rescind the offer. Charlot [Webb] wanted to know what she should do now because she realized she had "blown it."

8

(Plaintiff's Local Rule 56.1 Statement and Additional Facts, Exhibit 3 K. Toney Ex. 000025)[2].

The undisputed evidence establishes that the résumé given to Webb and the statements made to Webb by Toney concerning Toney's tenure at the Hospital and the reasons why Toney left the Hospital were all true and consistent with the settlement agreement between Toney and the Hospital. The undisputed evidence also establishes that Webb contacted Mook, as a representative of the Hospital, to inquire about Toney as a potential employee at the U of C. Additionally, the undisputed evidence reveals that while Mook did not speak to Webb about Toney's abilities, Mook did give false statements to Webb concerning Toney's tenure of employment and concerning the reasons why Toney no longer worked at the Hospital. The evidence also reveals that Webb considered Mook's fallacious statements in deciding not recommend Toney to be hired at the U of C. In sum, based on the undisputed evidence a reasonable jury could find that before Webb talked to Mook, Toney was a qualified candidate for a position at the U of C and that Toney actually had the secured a position at the U of C, but that after Webb talked to Mook Toney was still a qualified candidate for a position at the U of C, but that Webb nonetheless rescinded Toney's offer of employment based on false statements given by Mook. Evaluating all the evidence in the record and drawing all reasonable inferences in favor of Toney, this court finds that there is sufficient evidence in the record such that a reasonable jury could find that a casual connection exists between Toney's protected speech and the adverse employment action suffered by Toney.

Since Toney has established her prima facie case of retaliation under Title VII, the

---

[2]The contents of this e-mail could be admitted into evidence at trial, as Toney could call Charlot Webb, Marilyn Rice, or Diane Tucker to the witness stand to testify to the facts stated in this e-mail. As a result, whether the statements contained in the electronic message is hearsay as it stands right now in this motion for summary judgment is irrelevant.

9

evidentiary burden now shifts to the Hospital to articulate legitimate, nondiscriminatory reasons for the bad references given to the U of C. The Hospital does not articulate any legitimate, nondiscriminatory reasons for the bad/incorrect references given to the U of C by Mook. Instead, the Hospital argues that Toney suffered no an adverse employment action, that all of Toney's claims including this one for retaliation are barred based on an exculpatory agreement signed by Toney, and that any negative statements made by Mook are not the responsibility of the Hospital because Mook made those statements outside the scope of her employment. All of the Hospital's arguments are without merit and having failed to articulate any legitimate nondiscriminatory reasons for giving the U of C bad references, the Hospital's motion for summary judgment is denied as to Count IV of the complaint.

B.  Toney suffered an adverse employment action

An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." See Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1001 (7th Cir. July 21, 2000)(quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). The Hospital argues that Toney suffered no adverse employment action because Toney cannot adduce any evidence to establish a genuine issue of fact that she was qualified for a general medical technologist in the Coagulation Lab or in Blood Bank Transfusion Services at the U of C. In response, Toney adduces U of C's Verified Responses to Allegations submitted by the U of C to the State of Illinois Department of Human Rights in response to charges of discrimination filed by Toney. In the U of C's verified responses, the U of C admitted that Toney met the minimum

requirements for a general medical technologist[3]. The Hospital offers no other evidence in the record to suggest that Toney did not posses or was not otherwise qualified to be hired by the U of C.

C.   The final two miscellaneous arguments raised by the Hospital are without merit.

The Hospital's final two arguments as to why summary judgment should be granted in their favor are desperate attempts to shield themselves from potential Title VII liability. First, the Hospital argues that all of Toney's claims against the Hospital are barred because of an exculpatory agreement signed by Toney with the U of C. The undisputed evidence in this case establishes that when Toney applied for a job at the U of C, Toney signed a release as part of her application which authorized the U of C to seek information from her current and/or previous employers and thereby released those current and/or former employers from any and all liability resulting from the inquiries of the U of C. The Hospital states it is free from any claim brought by Toney in this case based on the release, signed by Toney and between Toney and the U of C.

In general, courts may enforce general releases: "There appears to be no general public-policy bar to negotiated releases of employment-discrimination claims. '[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement.'" Alexander v. Gardner-Denver Co., 415 U.S. 36, 52, 94 S.Ct. 1011, 1021 (1974); Riley v. American Family Mutual Ins., 881 F.2d 368, 371 (7th Cir.1989); Oglesby v. Coca-Cola Bottling Co., 620 F.Supp. 1336, 1341 (N.D.Ill.1985). Upon exhaustive research, however, this court could not find a case that stood for the proposition that a former employer may give false or negative information to a potential

---

[3]The information contained in these verified responses could be admitted into evidence at trial, if Toney called an appropriate representative of the U of C as a witness at trial to testify as to the facts contained in the verified responses. Accordingly, the contents of the verified responses can be submitted by Toney and considered by this court in opposition of this motion for summary judgment. See, supra section III.A p.9 n.2.

11

employer concerning a potential employee without civil repercussions based on an agreement between the potential employer and potential employee. The undisputed evidence reveals that Mook gave false information about Toney to Webb and that as a result of this false information Webb did not recommend Toney for a position at the U of C. This court finds that Toney's claims against the Hospital are not barred based on an agreement between Toney and the U of C because any agreement between Toney and the U of C did not authorize the Hospital to disseminate false information about Toney to Toney's detriment without possible civil liability. Furthermore, this court finds that Toney's claims against the Hospital are not barred based on an agreement between Toney and the U of C because the Hospital lacks proper standing to enforce an agreement between Toney and the U of C. Under Illinois law, a cause of action based on a contract may only be brought by a party to that contract or someone in privity with a party. Kaplan v. Shure Bros., Inc., 153 F.3d 413, 418 (7th Cir. 1998)(citing White Hen Pantry, Inc. v. Cha, 214 Ill.App.3d 627, 158 Ill.Dec. 310, 574 N.E.2d 104, 109 (1991)). Accordingly, the Hospital's attempts to shield itself from Title VII liability via an agreement between U of C and Toney must fail.

In the Hospital's final attempt to shield itself from Title VII liability, the Hospital tries to disassociate itself from Mook by arguing that any negative statement given by Mook to Webb was outside the scope of her employment and therefore not the responsibility of the Hospital. Whether the Mook's actions fell within the scope of employment is decided under state law, Taboas v. Mlynczak, 149 F.3d 576, 582 (7th Cir. 1998)(citing Snodgrass v. Jones, 957 F.2d 482, 484 (7th Cir.1992), and the Hospital bears the burden of demonstrating that Mook was acting outside the scope of her employment. See Snodgrass, 957 F.2d at 487 n. 3. Based on all the evidence in the record, this court finds that the Hospital has failed to carry its evidentiary burden.

Under Illinois law, "[n]o precise definition has been accorded the term 'scope of employment,' but broad criteria have been enunciated." Pyne v. Witmer, 129 Ill.2d 351, 543 N.E.2d 1304, 1308 (1989) (quotation and citation omitted). An employee's action falls within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." Id. (citing Restatement (Second) of Agency § 228 (1958)). The Hospital argues that no one at the Hospital, including Mook, could have gave the U of C a bad reference because the Hospital maintains a policy against such statements being given. The Hospital's employee handbook provides that in response to inquires by potential employers regarding current or former employees, employees contacted are only allowed to provide the dates of employment and positions held. In particular, supervisors at the Hospital, including Mook, are not allowed to speak with potential employees at all and should instead direct all such inquires to the human resources department. This court finds that Mook in talking with Webb, talked with Webb in a manner that was consistent with the Hospital's policies. The undisputed evidence establishes that Mook only provided Webb with the dates of Toney's employment, Toney's position and the reason why Toney left the Hospital. The Hospital would not be arguing that Mook's statements were outside the scope of her employment had the information given by Mook to Webb been correct and accurate. Accordingly, in light of Mook's false statements given as a supervisor at the Hospital to Webb, the Hospital cannot now retroactively discharge Mook as a representative of the Hospital in an attempt to shield itself from Title VII liability. See Buechele v. St. Mary's Hosp. Decatur, 156 Ill.App.3d 637, 509 N.E.2d 744, 746 (1987) (holding that respondeat superior liability may attach if an employee criticizes a co-employee in bad faith in a report filed with a state agency). Applying the criteria set out in Illinois

13

law, this court finds that Mook acted within her scope of employment when she spoke to Webb and gave false statements concerning the employment history of Toney at the Hospital.

## CONCLUSION

For the above stated reasons, defendant's motion for summary judgment is GRANTED as to Count II and Count III of the complaint. St. Francis' motion for summary judgment is DENIED as to Count IV of the complaint. The claims stated in Count IV of the complaint will proceed to trial on the date previously scheduled.

This court strongly urges counsel and the parties to confer regarding a settlement in this case. This case is set for report on the status of settlement at 9:00 am on May 15, 2001. All previously set dates remain.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: April 25, 2001